UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RONALD O'BRIEN,

                Plaintiff,

                                                Case Number 10-12700-BC

v.                                             Honorable Thomas L. Ludington

CITY OF SAGINAW and
LARRY CAMEL,

                Defendants.

_____ /

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS,
DISMISSING PLAINTIFF'S DEFAMATION CLAIM AGAINST THE CITY OF
SAGINAW WITH PREJUDICE, AND CANCELING HEARING**

Plaintiff Ronald O'Brien served as an independent site coordinator for the Saginaw East Side Weed and Seed Program from January 6, 2009 through January 13, 2010. The Weed and Seed program "is a national community-based strategy to 'weed out' violent crime, drug abuse and gang activity in designated neighborhoods while planting the seed of knowledge in the community." Pl.'s Compl. ¶ 9. The Saginaw Weed and Seed Steering Committee declined to renew Plaintiff's contract at its January 13, 2010 meeting. *Id.* ¶ 19. Plaintiff contends that the decision was motivated by Defendant Larry Camel's statement that Plaintiff is "a racist and hat[es] children." *Id.* ¶¶ 18–19.

On July 7, 2010, Plaintiff filed a three-count complaint against Camel and the City of Saginaw, alleging that the Defendants infringed his rights to due process and equal protection pursuant to 42 U.S.C. § 1983 and defamation. On September 21, 2010, Defendants filed a motion for partial judgment on the pleadings, contending that the defamation claims against both Defendants should be dismissed. [Dkt. # 11]. Plaintiff concedes that the City of Saginaw is not liable for the alleged defamation, but contends that he has properly pleaded a claim for relief against

Defendant Camel.  For the reasons explained below, the motion will be granted in part and denied in part.

## I

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  The requirement is meant to provide the opposing party with " 'fair notice of what the . . . claim is and the grounds upon which it rests.' "  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 42, 47 (1957)).  If a complaint does not meet that standard, the opposing party may move to dismiss it for failure to state a claim at any time before filing an answer or for judgment on the pleadings after filing an answer.  Fed. R. Civ. P. 12(b)(6) & (c).  "[T]he legal standards for adjudicating Rule 12(b)(6) and Rule 12(c) motions are the same . . . ."  *Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007).

"While a complaint attacked by a Rule [12(c) motion for judgment on the pleadings] does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (2007) (citations omitted).  "Factual allegations must be enough to raise a right to relief above a speculative level, on the assumption that all the allegations in the complaint are true . . . ."  *Id.* at 555–56 (citations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570)).  "Facial plausibility" requires the plaintiff to include sufficient "factual content that allows the court to draw the reasonable inference that the defendant

-2-

is liable for the misconduct alleged." *Id.*

## II

Plaintiff contends that on January 6, 2009, he signed a one-year contract to serve as a site coordinator for the Weed and Seed Program. The contract ran through January 5, 2010. Pl.'s Compl. ¶¶ 13–14. The Weed and Seed Program was managed by the Weed and Seed Steering Committee, which consisted of twenty members. Half the Steering Committee members were affiliated with local law enforcement agencies and half were community members. *Id.* ¶ 11. Defendant Camel was a community member on the Steering Committee. *Id.* ¶ 3. In December 2009, the Steering Committee formed an Evaluation Committee to assess Plaintiff's performance. *Id.* ¶¶ 15–16. The Evaluation Committee determined Plaintiff's performance was satisfactory. *Id.*

On January 13, 2010, the Steering Committee held a regularly scheduled meeting. *Id.* ¶ 17. Although Plaintiff's performance was not on the agenda, Defendant Camel raised the issue and "accused Plaintiff of being a racist and hating children." *Id.* ¶¶ 18, 20. Defendant Camel's statements were "false." *Id.* ¶ 35. As a result of Defendant Camel's statements, the Steering Committee called an unscheduled vote on whether to renew Plaintiff's contract and the contract was not renewed. *Id.* ¶¶ 19–23. On July 8, 2010, Plaintiff filed a three-count complaint alleging violations of the Equal Protection Clause and Due Process Clause through 42 U.S.C. § 1983 and a defamation claim. Defendants now contend that the defamation claims should be dismissed.

## III

"A communication is defamatory if it tends to lower an individual's reputation in the community or deters third persons from associating or dealing with that individual." *New Franklin Enters. v. Sabo*, 480 N.W.2d 326, 328 (Mich. App. 1991) (citing *Swenson-Davis v. Martel*, 354

N.W.2d 288, 290 (Mich. App. 1984)). Not all "defamatory" communications, however, are actionable in Court. The defamatory communication must also be false, concern the plaintiff, be published to a third party, the publication must be unprivileged, the publisher must be at least negligent in making the publication, and the statement must be actionable "irrespective of special harm (defamation per se)" or have caused special harm (defamation per quod). *Ireland v. Edwards*, 584 N.W.2d 632, 636–37 (Mich. App. 1998) (citing *New Franklin Enters.*, 480 N.W.2d at 328).

The only question currently before the Court is whether the accusation that Plaintiff is a "racist" and "hat[es] children" can be false. That is, can a jury reasonably conclude as a matter of objective fact that Plaintiff is *not* racist and Plaintiff does *not* hate children. If not, the defamation claims should be dismissed because "statement[s that] cannot be reasonably interpreted as stating actual facts about the plaintiff [are] protected by the First Amendment." *Ireland*, 584 N.W.2d at 636 (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990); *Garvelink v. Detroit News*, 522 N.W.2d 883, 886 (1994)).

Michigan law recognizes the importance of protecting one's reputation against false and defamatory statements of fact, but not at the expense of constitutionally protected free expression. *Gravelink*, 522 N.W.2d at 885–86. Accordingly, a defamation claim based on subjective expressions of opinion that cannot be proved false and do not imply facts that can be proved false should be dismissed by the Court. *Id.* at 886; *see also Ireland*, 584 N.W.2d at 638 ("[A] court may decide as a matter of law whether a statement is actually capable of defamatory meaning.") (citation omitted).

In *Milkovich*, a leading U.S. Supreme Court case addressing the tension between First Amendment rights of expression and defamation actions, the Court emphasized that labeling a

-4-

statement an "opinion" does not automatically trigger First Amendment protection for the publisher. 497 U.S. at 13. Nevertheless, at least where the defamatory statement is a matter of public concern, the Plaintiff must prove that the statement is false in order to prevail.[1] *Id.* at 16. In situations where the statement is a subjective opinion that does not imply the existence of provable facts, that burden is often difficult, if not impossible, to meet. The Supreme Court explained the distinction with an example:

> If a speaker says, "In my opinion John Jones is a liar," he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications; and the statement, "In my opinion Jones is a liar," can cause as much damage to reputation as the statement, "Jones is a liar."

*Id*. at 18–19. By contrast, "the statement, 'In my opinion Mayor Jones shows his abysmal ignorance by accepting the teachings of Marx and Lenin,' would not be actionable" because it "does not contain a provably false factual connotation." *Id.* at 20.

Turning to the facts of the case before it, the Supreme Court concluded that a newspaper column, even though identified as an opinion, suggested the existence of facts that could be proved false. Accordingly, the column's publisher was not entitled to First Amendment protection for the defamatory statements it contained. *Id.* at 22–23. The column in question insinuated that a high school wrestling coach committed perjury to avoid the consequences associated with instigating a brawl at a high school wrestling match. *Id.* at 4–5 & n.2. The column stated, in part, "[a]nyone who

---

[1] The parties have not addressed whether or not Plaintiff is a public figure or whether the alleged defamatory statement referred to a matter of public concern. Either way, the statement must be false in order for Plaintiff to prevail. If Plaintiff is a public figure or the statement was a matter of public concern, Plaintiff will be required to prove the statement is false. *Milkovich*, 497 U.S. at 16.

attended the meet . . . knows in his heart that Milkovich [the wrestling coach] . . . lied at the hearing after . . . having given his solemn oath to tell the truth." *Id.* The Court emphasized that accusations of perjury, even if identified as opinions, are actionable.

In *Ireland*, the Michigan Court of Appeals applied the principles articulated in *Milkovich* to a defamation case that arose from statements made by an attorney during a high-profile child custody dispute  584 N.W.2d 632.  The attorney for the father, defendant Sharon Lee-Edwards, disparaged the mother's parenting skills, indicating to the media that plaintiff Jennifer "Ireland is an unfit mother" and that Ireland's daughter, Maranda, "suffered a fractured arm because of Ireland's neglect." *Id.* at 635–36.  The Michigan Court of Appeals concluded that the statements were not actionable because the questions "whether a child's arm was fractured because of neglect" and "whether someone is a 'fit mother,' [are] necessarily subjective." *Id.* at 637.  The statements could not be proved false.

In this case, Defendants contend that calling Plaintiff a "racist" who "hat[es] children" is like calling a person an "unfit mother" who caused injury to a child through "neglect."  That is, whether or not Plaintiff is a "racist" who "hat[es] children" is a subjective question of opinion that cannot be objectively proved false. *Id.*  As Plaintiff emphasized in his response, however, the allegedly defamatory statements should not be viewed in isolation, but in the context in which they were uttered. *Id.* at 635–37 (describing the background from which the *Ireland* defamation case arose); *Locricchio v. Evening News Ass'n*, 476 N.W.2d 112, 133 (Mich. 1991) (emphasizing that the inquiry into whether a series of newspaper articles falsely implied a connection between the plaintiffs and organized crime required consideration of the articles as a whole rather than individual statements).

In *Ireland*, for example, the question was whether accusing a mother embroiled in a

-6-

contentious and controversial custody dispute of being "unfit" and causing injury through "neglect" could ever be proven false. The young mother, an honors student at the University of Michigan, garnered national media attention after her three-year-old daughter was removed from her care because the mother was forced to employ a day care provider to make time for her studies. The court granted custody to the father, a young man who lived with his parents, because the three-year-old's grandmother would care for the child while the father was in school. Although the Michigan Court of Appeals did not provide a detailed discussion of the factual background, it was certainly aware of the political and social context of its decision. When the father's attorney, the defendant in the *Ireland* defamation case, accused the mother of being "unfit," she was essentially making an argument about which parent was entitled to custody of the child, albeit a controversial argument that was addressed to the press and not the courts. The Michigan Court of Appeals determined that the argument about Ireland's fitness as a mother was an opinion that did not imply facts that were provably false. Indeed, the defendant's argument or opinion about Ireland's fitness as a mother was based on facts that Ireland admitted to be true. The child was placed in a day care so the mother could pursue her studies. The child did fracture her arm while in the mother's care.

By contrast, in *Milkovich*, the defendant publisher accused the plaintiff of committing a criminal offense, perjury, to protect himself from the consequences of inciting a brawl. The plaintiff in the defamation action, a high school wrestling coach and educator, had been accused of committing a crime that can be proved. Indeed, a crime that often is charged and proved beyond a reasonable doubt. Perjury, unlike fitness as a mother, is not measured by degrees. It either occurred or it did not occur.

The accusations involved in this case have some analytical traits of both *Milkovich* and

-7-

*Ireland*.  That is, one cannot prove a person is a racist or not a racist, or that the person hates children or likes children, with the same objective confidence that one can prove a person lied under oath.  Still, when the accusations are viewed in the context described in the complaint, they can be interpreted as more than a subjective opinion about Plaintiff's beliefs and attitudes.  The accusations were a direct attack on Plaintiff's job performance, and indeed led to the Steering Committee to decline to renew his contract.  In that context, the accusation implies that Plaintiff failed at his job because he treats people differently depending on their race and he "hates" the very group he was hired to support and "seed" with knowledge.

Particularly at this stage of the case—before the parties have had an opportunity to develop the surrounding circumstances through discovery—it is impossible to say whether or not the allegedly defamatory statements can be proved false or imply facts that can be proved false.  Plaintiff should be permitted to continue with discovery and further develop the factual context from which the statements arose.  Pursuant to Rule 12(c), Plaintiff's defamation claim should be dismissed only if it does not state a "plausible" claim for relief against Defendant Camel.  Accusing Plaintiff of being a "racist" who "hat[es] children" in this particular context states a plausible claim for relief.  It may be that when the facts are further developed it becomes apparent that the statements were not actionable.  If that is the case, Defendants will have an opportunity to challenge the claim with a summary judgment motion.  Fed. R. Civ. P. 56.

As a final note, Defendants cite a series of cases from other jurisdictions where courts concluded, in particular circumstances, that defamation claims cannot be predicated upon accusations of racism.  *See Stevens v. Tillman*, 855 F.2d 394, 400–02 (7th Cir. 1988) (concluding accusation of racism was not actionable because it was an opinion); *Smith v. Sch. Dist. of Phila.*, 112

-8-

F. Supp. 2d 417, 429–30 (E.D. Pa. 2000) (granting judgment on the pleadings after concluding that the accusation of racism was an opinion); *Martin v. Brock*, No. 07C3154, 2007 WL 2122184, at *3 (N.D. Ill. July 19, 2007) (accusation of racism is nonactionable opinion in Illinois); *Lennon v. Cuyahoga Cnty Juvenile Ct.*, No. 86651, 2006 WL 1428920, at * 6 (Ohio Ct. App. May 25, 2006) (concluding that in the specific context of the accusation, calling a co-worker racist was nonactionable opinion); *Puccia v. Edwards*, No. 98-00065, 1999 WL 513895, at *3–4 (Mass. Super. Ct. Apr. 28, 1999) (concluding accusations of racism are nonactionable opinion); *Covino v. Hagemann*, 627 N.Y.S.2d 894, 895–96 (N.Y. Sup. Ct. 1995) (concluding statement that plaintiff had "racially sensitive attitude" is not actionable).  Most of those cases, however, had better developed factual records, and in every case, the Court looked beyond the statement itself to the context from which it arose.  Moreover, other courts have reached different conclusions, permitting defamation actions predicated on accusations of racism to proceed.  *See Puchalski v. Sch. Dist. of Springfield*, 161 F. Supp. 2d 395, 408 & n.7 (E.D. Pa. 2001) (distinguishing *Stevens* and *Smith* and concluding that accusations of racism can form the predicate for a defamation claim); *Fitzpatrick-Smith v. Jacobson*, 2000 CarswellOnt 768 (Can. Ont. Super. Ct.) (WL) (same).

## IV

Accordingly, it is **ORDERED** that Defendants' motion for partial judgment on the pleadings [Dkt. # 11] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Plaintiff's defamation claim against Defendant City of Saginaw is **DISMISSED WITH PREJUDICE** but Plaintiff's defamation claim against Defendant Camel will be permitted to go forward.

It is further **ORDERED** that the hearing scheduled for December 21, 2010 at 4:00 p.m. was

-9-

**CANCELED** because the parties papers provide the necessary factual and legal information to

decide the motion. *See* E.D. Mich. L.R. 7.1(f)(2).


s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: January 3, 2011

<div style="border:1px solid black; background:#cccccc; padding:10px;">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 3, 2011.

s/Tracy A. Jacobs
TRACY A. JACOBS

</div>