UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RONALD O'BRIEN,

       Plaintiff,

                                              Case Number 10-12700-BC

v.                                       Honorable Thomas L. Ludington

CITY OF SAGINAW and
LARRY CAMEL,

       Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, DISMISSING
PLAINTIFF'S CONSTITUTIONAL CLAIMS WITH PREJUDICE, AND
DISMISSING PLAINTIFFS' STATE LAW CLAIM WITHOUT PREJUDICE**

     Plaintiff Ronald O'Brien contracted with Defendant City of Saginaw in January 2009 to serve as an independent site coordinator for the Saginaw East Side Weed and Seed Program. The Weed and Seed program "is a national community-based strategy to 'weed out' violent crime, drug abuse and gang activity in designated neighborhoods while planting the seed of knowledge in the community." Compl. ¶ 9, ECF No. 1. The contract was for a one-year term, from January 6, 2009, through January 5, 2010, terminable by either party "at any time with or without cause by providing a 15-day notice in writing." Pl.'s Opp'n Summ. J. Ex. 4 § I, ECF No. 24-5; Defs.' Mot. Summ. J. Ex. A § I, ECF No. 21-2. The contract also stated that Plaintiff agreed "not to commence any action or suit relating to the Agreement more than six months after the date of termination of the Agreement." Pl.'s Ex. 4 § VII; Defs.' Ex. A § VII.

     As the contract neared its conclusion in December 2009, the Saginaw Weed and Seed Steering Committee agreed to extend the contract on a month-to-month basis until the Saginaw Weed and Seed Executive Committee completed its evaluation of Plaintiff's performance. On

January 13, 2010, a Saginaw Weed and Seed Committee meeting was held. The Executive Committee had completed its evaluation. It recommended that Plaintiff's contract not be renewed. A discussion then ensued, during which Defendant Larry Camel stated that Plaintiff is "a racist and hat[es] children." Compl. ¶ 18. The Steering Committee put the issue of whether to renew Plaintiff's contract to a vote. Seven to four, the Steering Committee declined to renew Plaintiff's contract. Plaintiff contends that the decision was influenced by Camel's statement. Camel and the City (collectively, "Defendants") dispute this. They offer affidavits of six committee members who voted against Plaintiff, each of whom made averments such as: "statements made at the meeting by . . . Camel describing [Plaintiff] as a racist who hated or did not like children (or words to that effect) did not influence my decision regarding the renewal of [Plaintiff's] contract." Defs.' Mot. Summ. J. Ex. G ¶ 6; *see also* Defs.' Exs. EE ¶ 5, FF ¶ 3, GG ¶ 4, HH ¶ 3, II ¶ 3. After the meeting, Plaintiff was given fifteen days notice in writing that his contract was terminated.

On July 1, 2010, Plaintiff wrote to the City requesting a "name-clearing hearing." The following day, he spoke with a City representative. Noting that the contract's six month limitation of actions clause would elapse on July 13, 2010, Plaintiff requested that either the hearing be held on or before July 13, or that the City agree to toll the limitation of actions clause. The City responded that it was willing to hold a name-clearing hearing, but that it was unable to arrange the hearing by July 13, and that it was unwilling to toll the limitation of actions clause. Plaintiff then filed a three-count complaint against Defendants on July 7, 2010, alleging that they had violated 42 U.S.C. § 1983 by infringing his rights to due process and equal protection, and that they had violated Michigan common law by defaming him.

-3-

In August, the City wrote to Plaintiff regarding the name-clearing hearing. The City offered a hearing "during which [Plaintiff], his attorney and/or persons who would like to speak on his behalf may respond to any statements made at the January 13, 2010 meeting." Defs.' Mot. Summ. J. Ex. V. Over the next several weeks, the parties corresponded regarding the format of the hearing, its location, and how it would be publicized. On September 30, 2010, Plaintiff wrote to the City that he would "agree to the name[-]clearing hearing in the manner and form presented [by the City] if notice is published in *The Saginaw News*." Defs.' Ex. U. The City agreed in writing by letter dated October 8. Defs.' Ex. V. On November 4, Plaintiff rescinded his request for a name-clearing hearing, writing: "Upon further reflection, [I] have determined that the manner in which you proposed that the name-clearing hearing proceed will cause [me] further humiliation." Defs.' Ex. X. Instead, Plaintiff proposed, the parties should "proceed with discovery on other matters and delay the name[-]clearing hearing until such time we determine that this case cannot be amicably resolved." *Id*.

On September 21, 2010, Defendants filed a motion for partial judgment on the pleadings, contending that the defamation claims against both Defendants should be dismissed. ECF No. 11. The Court granted Defendants' motion in part and denied it in part, dismissing the defamation claim against the City with prejudice, but permitting the defamation claim against Camel to go forward. *O'Brien v. City of Saginaw*, No. 10-12700-BC, 2011 WL 8143, at *6 (E.D. Mich. Jan. 3, 2011).

On May 26, 2011, Defendants filed the instant motion for summary judgment, arguing that Plaintiff's claims should be dismissed for the following reasons: (1) his due process claim should be dismissed as he cannot establish that was deprived of a liberty interest in his good name or a property interest in the at-will contract; (2) his equal protection claim should be

dismissed as he is a public employee and thus he cannot establish a "class of one" violation; and (3) his defamation claim should be dismissed as he cannot establish damages. For the reasons discussed below, Defendants' motion will be granted.

### STANDARD OF REVIEW

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of informing the Court of the basis for its motion, and identifying where to look in the record for relevant facts "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must "set out specific facts showing a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). If the opposing party does not raise genuine issues of fact and the record indicates the moving party is entitled to judgment as a matter of law, the court shall grant summary judgment. *Anderson*, 477 U.S. at 250.

The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. The party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## ANALYSIS

**A.     Plaintiff's § 1983 Claims**

1.     *The Liberty Interest Claim*

"[R]eputation, good name, honor, and integrity are among the liberty interests protected by the due process clause of the fourteenth amendment." *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002) (quoting *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989)); *see also Burkhart v. Randles*, 764 F.2d 1196, 1201 (6th Cir. 1985) (concluding that a person's liberty interest in the person's "reputation and good name" are "well established"). To demonstrate a deprivation of this interest, a plaintiff must establish five elements:

> First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment. Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance. . . . Rather, to implicate the Due Process Clause, the employer must have made a statement in the course of the employee's discharge that might seriously damage his standing and associations in his community or that might impose on him a stigma or other disability that would foreclose his freedom to take advantage of other employment opportunities. . . . Third, the stigmatizing statements or charges must be made public. Fourth, the plaintiff must claim that the charges made against him were false. Lastly, the public dissemination must have been voluntary.

*Ludwig v. Bd. of Trs. of Ferris State Univ.*, 123 F.3d 404, 410 (6th Cir. 1997); *see also Brown v. City of Niota*, 214 F.3d 718, 723 (6th Cir. 2000) (quoting "the five elements of the *Ludwig* test").

Deprivation of this liberty interest triggers the plaintiff's right to "notice and an opportunity to be heard to refute any charges." *Chilingirian v. Boris*, 882 F.2d 200, 205-06 (6th Cir. 1989) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972)). *Cf. Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971) ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."). That is, once a plaintiff establishes the five elements of a liberty

interest claim under *Ludwig*, "he is entitled to a name[-]clearing hearing if he requests one." *Quinn*, 293 F.3d at 320 (quoting *Brown*, 214 F.3d at 723).

Critically, however, a due process violation occurs only when "upon request for a name-clearing hearing, the [plaintiff] is denied." *Id*. In other words, "the right to recover arises from the denial of a hearing to refute the charges." *Id*. (quoting *In re Selcraig*, 705 F.2d 789, 797 n.10 (5th Cir. 1983)); *see also Brown*, 214 F.3d at 723 ("[P]laintiffs must request a name-clearing hearing and be denied this hearing before they have suffered a deprivation of their liberty interest without due process of law.").

Plaintiff argues that the City's refusal to hold the name-clearing hearing on or before July 13 was an "effective rejection" — a de facto denial. Pl.'s Opp'n Summ. J. 16. Plaintiff's conduct, however, demonstrates that neither he nor the City believed the name-clearing hearing was effectively rejected in July 2010. In August 2010, the City inquired into the status of the hearing. Discussions ensued over the following weeks regarding the format of the hearing, its location, and how it would be publicized. On September 30, 2010, nearly three months after filing the complaint, Plaintiff wrote to the City that he would "agree to the name[-]clearing hearing in the manner and form presented [by the City] if notice is published in *The Saginaw News*." Defs.' Mot. Summ. J. Ex. U. The City agreed. About a month later, however, Plaintiff rescinded his request, proposing instead to "delay the name[-]clearing hearing until such time we determine that this case cannot be amicably resolved." Defs.' Mot. Summ. J. Ex. X. Plaintiff, not Defendants, provided the "effective rejection" of the agreed upon name-clearing hearing.[1]

---

[1] In passing, it should be noted that this is not a case in which the City refused to hold the name-clearing hearing before the contract's limitation of actions clause had run, refused to toll the clause, and then also refused to schedule a name-clearing hearing because a complaint had been filed. *See generally Boensch v. Delta College*, No. 10-10120-BC, 2011 WL 1233301, at *12 (E.D. Mich. Mar. 30, 2011) (holding that the statute of limitations for § 1983 claims can be decreased by contract). Whether such a course of conduct would constitute a de facto denial is, of course, a closer question — but one not before the Court.

Plaintiff also argues that the proposed name-clearing hearing failed to satisfy due process because a neutral decision maker was needed "to assess whether Plaintiff's contract was inappropriate[ly] terminated." Pl.'s Opp'n to Summ. J. 19. The purpose of a name-clearing hearing, however, is simply "to afford the aggrieved employee an opportunity to be heard to refute the charges disseminated against him." *Quinn*, 293 F.3d at 320 (internal quotation marks omitted) (quoting *Ludwig*, 123 F.3d at 410). As this Court recently explained, "A name-clearing hearing, as the name implies, is a chance for a public employee to clear his name after the employment relationship ends. Although it is certainly possible a public employer may reconsider its decision following such a hearing, the Constitution does not require reconsideration." *Awrey v. Gilbertson*, No. 10-14242-BC, 2011 WL 2312175, at *4 (E.D. Mich. June 9, 2011).

Moreover, a name-clearing hearing "need only provide an opportunity to clear one's name and need not comply with formal procedures." *Quinn*, 293 F.3d at 321 (quoting *Ludwig*, 123 F.3d at 410). "No particular procedures are required," the court explained in *Gregory v. Hunt*, 24 F.3d 781 (6th Cir. 1994), "except that the person receive a hearing at which he receives an opportunity to clear his name." *Id.* at 789. In *Chilingirian*, for example, the Sixth Circuit rejected the plaintiff's "protestations that his hearing was inadequate due to the [defendant's] failure to respond to his eleven submitted questions," finding the procedures adequate as "[the plaintiff] and his attorney spoke at length before the council and were not cut off prematurely" and "he was not precluded from introducing favorable statements of others to support his claims that the statements made against him were false." 882 F.2d at 206.

Plaintiff's reliance on *Gregory* is misplaced. In dicta,[2] the court noted — and dismissed — the plaintiff's objection "that the hearing was not fair because [the defendant] was not a neutral decision maker." *Id*. Writing that "we have reviewed the record and cannot find any evidence of bias interfering with a fair and adequate hearing," the court concluded that "[the plaintiff's] failure to receive a hearing in the manner contemplated by him does not alter the fact that he did receive a hearing at which he was extended ample opportunity to clear his name." *Id*.

In this case, the lack of a neutral decision maker does not alter the fact that Plaintiff was offered a hearing "during which he, his attorney and/or persons who would like to speak on his behalf [could] respond to any statements made at the January 13, 2010 meeting." Defs.' Mot. Summ. J. Ex. V. Defendants are entitled to judgment as a matter of law on Plaintiff's liberty interest claim.

2.   *The Property Interest Claim*

Defendants move to dismiss Plaintiff's due process claim, contending that he cannot establish that he was deprived of a property interest in an at-will contract. "An at-will public employee does not have a property interest in continued employment unless it can be shown that the employee had a reasonable expectation that termination would be only for good cause." *Gregory*, 24 F.3d at 785 (citing *Chilingirian*, 882 F.2d at 203); *see also Shimkus v. Hickner*, 417 F. Supp. 2d 884, 910-11 (E.D. Mich. 2006) (quoting *Gregory*, 24 F.3d at 785, and noting the rule "is well established"). The fact that the contract is for a definite term does not alter this rule. *See Schmitz v. Vill. of Breckenridge*, 107 Fair Empl. Prac. Cas. (BNA) 1229, at *24-25 (E.D. Mich. Oct. 9, 2009) (holding that plaintiff's contention that "because his employment contract was for a definite period of time, his employment could not be terminated without just cause" was

---

[2] The court prefaced its name-clearing hearing discussion by noting: "Whether Gregory is even entitled to a name-clearing hearing is not certain." *Gregory v. Hunt*, 24 F.3d 781, 788 (6th Cir. 1994).

"untenable"). Here, Plaintiff's contract was terminable by either party "at any time with or without cause." Pl.'s Opp'n Summ. J. Ex. 4 § I; Defs.' Mot. Summ. J. Ex. A § I. Thus, if Defendants were correct that Plaintiff was basing his property interest claim on his at-will contract, they would also be correct that Plaintiff cannot establish a property interest in the contract.

A careful reading of Plaintiff's pleadings, however, reveals that the asserted property interest is not in his at-will contract, but in his good name. *See* Compl. ¶ 30 ("Plaintiff seeks damages against Defendant who . . . deprived Plaintiff of his property right or liberty interest in his good name, reputation, honor and integrity."); Pl.'s Opp'n Summ. J. 12 ("Defendants deprived Plaintiff [of] his property or liberty interest in his good name, reputation, honor and integrity in violation of 42 U.S.C. § 1983."). But again, Plaintiff cannot establish a due process violation. Plaintiff offers no authority for his contention that a person has a property interest in his good name, and the Sixth Circuit has instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 406 (6th Cir. 1992). Moreover, an independent review of the handful of cases recognizing a property interest in good name or reputation have each treated the interest as a procedural due process right, not a substantive due process right. *See, e.g.*, *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 148 (4th Cir. 2009); *Seneca v. New Hope Borough*, No. 01-2307, 2002 WL 321663, at *4-5 (E.D. Pa. Feb. 27, 2002); *Hajduk v. Vocational Technical & Adult Educ. Dist.*, 356 F. Supp. 33, 34 (E.D. Wis. 1973). Procedural due process, of course, requires only notice and an opportunity to be heard. *See, e.g.*, *Constantineau*, 400 U.S. at 437 (1971), *cited in Iota Xi Chapter of Sigma Chi*

*Fraternity*, 566 F.3d at 147.  As Plaintiff declined the opportunity to be heard when he rescinded his request for a name-clearing hearing, Defendants are entitled to judgment as a matter of law on this claim.

3.    *Equal Protection Claim*

Defendants are correct that Plaintiff's equal protection claim must be dismissed because the "class of one" theory is not cognizable in the context of public employment.  *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 606 (2008).  *See* Defs.' Reply 3.  The Supreme Court has made plain that "the class-of-one theory of equal protection does not apply in the public employment context."  *Engquist*, 553 U.S. at 598.  As Plaintiff was a public employee, Defendants are entitled to judgment as a matter of law on this claim.

**B.    Plaintiff's State Law Defamation Claim**

The Court declines to exercise supplemental jurisdiction over Plaintiff's sole remaining state law claim of defamation.  28 U.S.C. § 1367(a) provides, "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  Indeed, "a federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims."  *Moon v. Harrison Piping Supply*, 465 F.3d 719 (6th Cir. 2006) (citation omitted); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *Perry v. Se. Boll Weevil Eradication Found.*, 154 F. App'x 467, 478 (6th Cir. 2005) (noting that dismissal is the "clear rule of this circuit").  As the Supreme Court has emphasized, "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."  *Gibbs*, 383 U.S. at 726.

The state law issue in this case — whether a defamation claim can be predicated upon an accusation of racism — is an open question in Michigan, and one which has received different answers in different jurisdictions. *See O'Brien v. City of Saginaw*, No. 10-12700-BC, 2011 WL 8143, at *5 ( E.D. Mich. Jan. 3, 2011) (collecting cases). Dismissing Plaintiff's defamation claim without prejudice will allow him to pursue it in a more appropriate forum.[3]

## CONCLUSION

Accordingly, it is **ORDERED** that Defendant's motion for summary judgment is **GRANTED**.

It is further **ORDERED** that Plaintiff's § 1983 claims for due process and equal protection violations against Defendants are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Plaintiff's defamation claim against Defendant Camel is **DISMISSED WITHOUT PREJUDICE**.

It is further **ORDERED** that the hearing scheduled for September 7, 2011, at 2:00 p.m. is **CANCELED** because the parties papers provide the necessary factual and legal information to decide the motion. *See* E.D. Mich. L.R. 7.1(f)(2).

/s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: August 26, 2011

---

[3] As an aside, although the one-year statute of limitations for defamation would ordinarily have run, the statute was tolled during the pendency of this case under Mich. Comp. Laws § 600.5856. *See Darin v. Haven*, 175 Mich. App. 144, 151, 437 N.W.2d 349, 352 (Mich. Ct. App. 1989) (noting that under Mich. Comp. Laws § 600.5856 "the applicable periods of limitation on [state law] causes of action [are] tolled for the duration of the federal litigation"). Thus, dismissing the claim without prejudice does not impair Plaintiff's ability to pursue his claim in the appropriate forum.

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 26, 2011.

s/Tracy A. Jacobs
TRACY A. JACOBS